Good morning. My name is Mary Boach. I'm CJA counsel for the appellant Jose Antonio Herrera, who throughout these proceedings is commonly referred to as Tony Herrera. We have presented three issues on appeal for the Court to consider. One is an issue you've seen many times before, the issue of multiple versus single conspiracies. The second is an issue of sentencing, entrapment, and jury instructions. And the third is an issue of whether or not the district court appropriately and properly considered the sentencing factors under 3553 in sentencing Mr. Herrera to 210 months in prison. The case arises out of a series of drug transactions. What is particularly important in this case is that each and every one of the drug transactions, which began not with Mr. Herrera but with his girlfriend and one-time co-defendant, began because the police came to her in an age of 18. And there may be an obvious answer to this, but what difference does the different conspiracies make? Is it because the amount of the drugs differs, then? With respect to the multiple versus single conspiracy, the difference for Mr. Herrera, I suggest, ties into the notion of sentencing entrapment. Had the subsequent testimony concerning the mule transactions where he allegedly delivered 4 pounds and 2 ounces on behalf of Mr. Olivas not been part of this case, because those are such significantly larger amounts of drugs than we were talking about in the individual sum set of counts, if that information had not been presented to the jury because it was part of a different conspiracy, that would have had a profound effect on his ability to argue the sentencing entrapment argument that we did argue to the jury. But it's sort of the big pink elephant in the corner of the room when you've got this subsequent alleged distribution of 4 pounds. And another question is, why isn't the conspiracy between Mr. Herrera and his girlfriend enough to make it a single conspiracy, the fact that they were involved in everything? I think it's probably comparable to a case cited by the government, and I'm going to butcher the name inguino, where you can have a central person, but you can have two different conspiracies. In that case, I believe it's the other way around. But you only have two central people, so you have at least a conspiracy between the two of them. But the question is, is are they conspiring? Is the conspiracy, it's not the two of them, it is Mr. Nye on the one hand. And why isn't it the two of them? Why can't the conspiracy be the two of them and the rest of them basically the spokes? Because the spokes have to have a connection on the outside, too. If you were talking about a conspiracy involving all of the conspirators that were named by the government, the success of any one of their ventures is supposed to be interrelated. There is no showing that the success of Mr. Nye's participation in this conspiracy has any dependence whatsoever on the success of Mr. Jimenez or Mr. Levis, none In fact, I submit to the Well, spokesmen don't have to know each other. That's clear. Conceded. But there's no interdependence of success. In other words, it isn't a situation where if Mr. Herrera and Mr. Levis succeed, that that inures to the benefit of Mr. Nye. In fact, in this case I submitted, it's quite the opposite. What happens is if Mr. Herrera or Ms. Theodorados are buying their drugs from Mr. Jimenez, Mr. Nye is not benefited. He is harmed because that is not a sale he is making. The issue with drug dealing is you conspire to sell drugs to make money. If you are not selling the drugs to Mr. Herrera and he's getting them from someone else, Mr. Nye is not making any money. Conversely, if Mr. Herrera is buying drugs from Mr. Nye under the circumstances of this case, Mr. Jimenez is not making any money. Mr. Levis's testimony in this case is even more remote. Is it necessary to get to any of these people if he is conspiring with a girlfriend on every sale? It is in this case because of the sentencing entrapment issue and because the conspiracy alleged involves these other people and that allowed the government to bring in the testimony regarding the four pounds that Mr. Levis says Mr. Herrera delivered to him in car sensing and then the additional two ounces, both of which occurred after the drug deals with the undercover agent had stopped. And it is because of that that it matters how we configure this conspiracy or conspiracies. I submit and point the fact that the evidence presented to the jury in this case actually supports the finding of three separate conspiracies. Yes, people knew each other, but we don't have the interdependence. At worst, it supports the finding of two conspiracies, not the one that is alleged in count one of the indictment. And that goes to the issue, again, I say of a sentencing entrapment. Now, I will concede that sentencing entrapment is one of those, it's like herding cats. It's hard to define the exact parameters of it. But in this case, I think it's crucial that each and every drug deal and the behavior of my client in this case, each and every time was at the behest of the undercover officer, at no time, and we've all seen cases where this is true, the dealer, in my case, Mr. Herrera, would be calling up his customer and saying, I've got some more drugs, are you interested? But that issue went to the jury. The entrapment issue did go to the jury. It went to the jury. It went to the jury on an instruction that said that each element had to, there had to be no entrapment as to each element, which would have included the amount. So I don't see the problem there. It did. The problem is, is the instruction that the court gave, in my opinion, and this is, again, the amorphous nature of sentencing entrapment and the lack of a lot of case law on this issue. Well, in fact, is there any case law supporting it? Is there any case law supporting me? Yeah. That sentencing entrapment is a defense. In? As opposed to being used in sentencing. I'm not, I'm not. As opposed to a judge taking it in, perhaps, into account in sentencing that the government manufactured a little bit more. Well, I think it has to be something that's taken into consideration now post-Borker because the jury has to reach beyond a reasonable doubt. Well, they did, but my, I have a more fundamental question. I'm looking up the law. I couldn't find where it's been established in this circuit or any, really any place. I think it's been established by, I cited the case of Stauffer, and I think there's language in there that fits the particular facts of this case, in that in Stauffer they talk about the fact that it's not just sentencing entrapment, but it's also sentencing manipulation, and that there isn't. But I think what Judge Trager is trying to point out is that in those cases dealt with post-conviction sentencing and the fact that the sentencing judge could take into effect these kinds of considerations into account, this, I mean, I, I, it seems to me is you don't have to get to sentence, you don't have to call it sentencing entrapment, it's just entrapment because each element of the crime, one of them is how much there is, and if they were entrapping him in a particular, as to a particular sale, by making it more rather than less, then that was entrapment, and that went to the jury on that basis. It's not different, it's just entrapment. Well, I guess that's why I respectfully disagree, because I think the kind of entrapment we are talking about in sentencing entrapment is qualitatively different than the traditional entrapment where you take someone who is not predisposed to commit a crime at all and gets talked into it or even coerced into it by the government. In this case, we have a qualitatively different mental state, and that's the case of Judge McKibben giving the traditional entrapment instruction, particularly when he says the reluctance of the defendant is the most important factor, because it's qualitatively different. Mr. Herrera was not entrapped into selling drugs in the traditional sense of entrapment, but the sentence and the exposure was manipulated entirely by the police. Now, it's true no one put a gun to their heads to make them do it, but each and every instance, the idea of – But then you would have to prove that he was disposed to sell one gram but not because the element of this crime is that he sold 10. It seemed to me that actually the instructions were more favorable than one might expect in the case. Number one, the judge said that the drug quantity was an element of the crime where the cases really say it's just a fact that has to be proved to the jury and then taken into account in sentencing. So here we have it as an element of the crime, and then the instruction on entrapment says that it's the government's burden in each instance to show that there was no entrapment as to the particular sale, so that it seems to me that you got everything that you could possibly want in the way of instruction. With respect to the issue of what the jury has to find beyond a reasonable doubt post-Fooker, you're correct. The distinction between an element of the offense and something the jury has to find beyond a reasonable doubt is the sentencing factor. I submit it may make sense to us, but I don't know that it makes a bit of difference to a jury. They're told there's certain things they have to find beyond a reasonable doubt. That's the position I have with respect to that issue is that there is a qualification. I assume you argued this. You argued to the jury. I did, but that's why it ties back into the issue of one conspiracy versus two conspiracies, because of that four-pound mule transportation. It would have been a lot easier for you if the four pounds wasn't there. Yes, it would. It would have been a lot easier if the undercutter officer hadn't been there, too, but I don't make the facts. I just deal with them. Since I see my time is running out, the last thing I'd like to touch on is if you look at the excerpt of record, Judge McKibben spent maybe a page going through the 3553 and other factors when he sentenced Mr. Herrera. I am aware of the fact that there is no requirement, nor am I suggesting that it has to be equal to Mr. Olivas's 51-month sentence. But at some point, the difference between those sentences has to go to the issue of reasonableness. If Mr. Olivas, who was the biggest drug dealer in Carson City by his own description, who was on, say, probation for selling drugs when he was selling drugs in the Federal case that got him arrested, gets a deal like he got, it is presumed, in addition to the fact that he cooperated, that that sentence is reasonable under the 3553 factors, the mere fact that my client went to trial as opposed to cooperating shouldn't warrant a sentence that is four times what a large drug dealer received, nor four times what his girlfriend received because she testified. I'm done. Thank you. Thank you very much. So tell us why the four pounds should be there, should have been in the case. Or put another way, why weren't there two conspiracies? Good morning, and may it please the Court. My name is Robert Ellman for the government. And, Judge Berzon, if you would repeat your question, I'm sorry, I didn't quite hear. Oh, I said put another way, why weren't there two conspiracies? Well, I think this is actually a fairly typical ongoing enterprise conspiracy. If you look at the model instruction this Court uses, which is 8.18, it states that conspiracy may continue for a long period of time and may include the performance of many transactions. I think that's what was going on here. This could be charged as one and was charged as one. Count one sets four. What I'm trying to understand is this. I did look pretty carefully, not that carefully, and I couldn't see any connection between Nye on the one hand and the rest of them on the other, except the core of the So the question is, is that enough, that the two of them were involved in everything, but Nye seemed to have no connection to the other three? Actually, I think it would be enough, but Nye is connected to Herrera in many of the paragraphs outlined in count one specifically. I'm not connected to Herrera, but what I'm trying to figure out is if he has anything at all to do with Jimenez, Uribe, and all of us. Well, he's tied to Jimenez in several paragraphs as well, specifically 23 and 15. Paragraphs of the indictment, you mean? Yes. What about the proof? As far as I could tell from the proof, Herrera and Theodorados were buying from himenez, Uribe, and all of us on the one hand, and Nye on the other, and there didn't seem to be any reason to think that those two were not competing drug sellers. Well, they appear to be cooperating through a sales representative, if you will, which is Theodorados, and I think, again, that's typical of an enterprise-type conspiracy. It's almost like arguing that the Ninth Circuit must be more than one court because Judge Fisher may not know some of your clerks or vice versa. You have one ongoing enterprise characterized by sales through Theodorados, who obtains both of whom work with and through the defendant, in this case, Herrera. I think that's typical of a drug enterprise. Now, I suppose what the defendants are arguing here is that this should have been charged as multiple single load conspiracies, and I suppose the government could have done that and still can. I mean, if you find that there was no sufficient evidence of the conspiracy, it goes back and we end up charging six or eight conspiracies and exposing the defendant in that way, which we can. I don't think it was necessary. Six or eight, but there might have been two. There might have been two. I beg your pardon? I was saying, you're making a sort of reductio ad absurdum argument. Her basic argument is that they're really two separate conspiracies, and Nye's Herrera is not, you know, in any way related, financially or any other way, to the one with, who was it? Jimenez, Elaviz, and the other guy, of whom's name I forget. Well, at the point where Mr. Herrera is involved, he's getting drugs to sell through Theodorados. I think that's the focal point of the conspiracy. I think all that matters is that he and Theodorados are working together in this case. He may have different sources, and I think the spokes in a wheel framework is probably the correct one for that. They need not — But it wasn't charged that way, and the question is, does that matter? It was charged against all the defendants who are Herrera, Theodorados, Jimenez, Nye, Uribe, and Halavas. And it said that the defendants, herein and others, both known and unknown, did knowingly, intentionally combine, conspire, and agree. So the allegation was that all six of them were part of the same conspiracy. And that's what I'm having trouble with. It would have been simple enough to discharge the conspiracy as Herrera and Theodorados, and there wouldn't be a problem, but it wasn't charged that way. And I don't — maybe it's harmless for that reason, but it wasn't charged that way. Well, if there is an error, I think it is harmless for that reason. But as you said earlier, it's not necessary for each of these co-conspirators to know each other. And I think that's — But they have to be at least — do or do they have to at least have the same economic interest? They did not, as far as one can tell. Nye was a competitor of the others. Well, I think they do have the same economic interest, and this is, again, related to the enterprise theory. If you consider Theodorados to be the sales representative in this organization, you consider two people, by your own reckoning, as the suppliers, Jimenez and Nye. If Theodorados can't sell drugs, if she's caught — if Herrera's caught, then Jimenez's economic activity through this conspiracy dries up, just as Nye's does, regardless who was supplying for that particular transaction. This is an ongoing enterprise over time. Their success is, in fact, interrelated, regardless whether they know each other, and regardless whether one or both of them is supplying for a particular buy. I'm really having a lot of trouble seeing that. Let's say Theodorados is the agent. On any particular sale, she has to decide who she's going to buy from, and she can choose either Nye on the one hand or Jimenez, Uribe, and Olivas on the other. It's like any other agent. That doesn't make her suppliers any less in competition with each other. It doesn't give them the same interests. It gives them competing interests, because each of them is going to try and get her to sell theirs — to buy their stuff instead of the other one. I mean, you don't have any connection, as I understand it, between Nye and the others, other than that they were selling through the same agent. I think that's true. So why aren't they competitors rather than a single enterprise? Because Theodorados's ongoing success is vital to both of them to continue in their drug trade, and it's through Herrera in each instance. He's the one who procures these drugs for Theodorados, as I understand the conspiracy. He goes out and finds them wherever they're available. There appear to be two sources, but I don't think they're necessarily competing with each other. You have a fairly confined conspiracy here in terms of scope, time, and geography, and charge. And those are the factors under — One thing I want to check, though, that — I mean, I gather that you cannot point to any evidence and aren't trying to, to show any other connection between Nye on the one hand and him as perhaps — I think that I have to concede that, Your Honor. Yes. So, I mean, I guess your enterprise theory really depends that at any moment she may be going to one group as opposed to the other. And they both have an economic interest in keeping this business going. Is that what you're saying? It is what I'm saying, Your Honor. And they are dependent upon each other. As you can see, the arrest here and, you know, involved — Even though they know each other, that Nye — that Nye was aware that Herrera was dealing with somebody else? I don't know the answer to that, Your Honor. I'm afraid I just don't know the record that well that I can definitively say. What this Court looks at — obviously, you know that you need not know co-conspirators in order to find a single conspiracy. Not know is a little different than — you don't have to know their name, but if you're aware of them, it makes it a lot easier to find a single conspiracy. Certainly. But the breadth of the conspiracy, I think, is defined by the factors this Court addresses when it determines whether there's one conspiracy or not. And that case is stoddard and it involves five factors. And I think this case fits well within all of them. It's time period. This spans approximately five and a half months. If you look at the case the model instruction relies on, it's United States versus Green. That, which is 523 F. 2nd, 229, a Second Circuit case. That involved an eight-year conspiracy. So certainly the five months is not unreasonable. When you look at place, geographically, these are very close together. It's the Reno-Carson City area in Nevada. None of the four locations where drugs were sold are more than 43 miles apart from each other. Third, you look at the number of people. Under the broadest take of this conspiracy, it's six people. When you look at count one, it's actually reduced to four. It actually doesn't say the number of people. It says the person's charge. And that's where we're having our problem. It says the person's charge is co-conspirators. Well, we've spoken about, I think, four or five different ones, Your Honor. Jimenez, Nye, Herrera, Feodorados, and I think Olivas is the fifth. In any event, that's not a great number of people and certainly typifies the number of conspiracy charges that this Court has upheld. The number of acts, again, set out in count one. It's 24 discrete acts, 12 transfers and deliveries. Twelve of the 24 acts are phone calls. And Mr. Herrera was directly in. I think this emphasis on numbers. I'm reading the quotation from Stoddard in your brief right now. It doesn't say anything about numbers of persons or numbers of acts. I think, isn't that the fourth factor of five, Your Honor? The overt acts, not the numbers. Oh, all right. Overt acts. Then we'll treat it as overt acts. And again, it's 24 and they're set forth in count one. And then I see I'm out of time. If I may just finish with Stoddard. The fifth factor is the number of statutes involved. And in this case, it's one. And that's my time. Thank you, Your Honor. Thank you, counsel, for a useful argument. The United States v. Herrera is submitted.
judges: B. Fletcher, Berzon, Trager